**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **NADIA KRYS,** | : | |
| **Plaintiff,** | : | **09 CV 5161 (HB)** |
| **- against -** | : | **OPINION & ORDER** |
| **YSRAEL A. SEINUK, P.C.** | : | |
| **Defendant.** | : | |

**Hon. Harold Baer, Jr., District Judge:**

Plaintiff Nadia Krys, appearing *pro se*, was an engineer that worked for the engineering firm Ysrael A. Seinuk, P.C. following brief stints at two other engineering firms. After working for the firm for less than two years, Krys was terminated by her employer for what they claim was shoddy work product. Krys, on the other hand, insists that she was treated unfairly by a supervisor, made to feel unwelcome at the office, and ultimately let go because of discrimination based on her gender. After administrative action before the Equal Employment Opportunity Commission, the plaintiff brought suit in this District for gender discrimination, pursuant to Title VII of the Civil Rights Act. The defendant employer has moved for summary judgment on Krys' claim and, for the reasons described below, that motion is granted.

## I. BACKGROUND[1]

Defendant Ysrael A. Seinuk, P.C. ("Defendant" or "YAS") is an engineering firm, founded by Ysrael Seinuk ("Seinuk"), with headquarters and most employees located in New York City. Def.'s Local Civ. R. 56.1 Statement of Facts ("Def.'s 56.1"), ¶¶ 1, 7. Seinuk is the CEO of YAS and is a professor of structural engineering, and chair of two committees, at The Cooper Union. *Id.* ¶¶ 15-16. Plaintiff Nadia Krys ("Plaintiff" or "Krys") is female, and was employed by YAS from on or around June 1, 2005 to November 17, 2006. *See id.* ¶¶ 43, 134. Krys graduated from the University of Calgary in 2003 with a B.S. in civil engineering and a minor in structural engineering. *Id.* ¶ 23. Prior to her employment at YAS, Plaintiff worked

[1] The facts in this decision are drawn from undisputed facts submitted by the parties, and any disputes are noted.

briefly for two other engineering firms: Wagh Engineers for three weeks in July 2003, and Goldstein Associates in August 2003. *Id.* ¶¶ 24-25. Krys tendered her resignation from Goldstein Associates on or about March 28, 2005, and, in April 2005, applied for a position at YAS. *Id.* ¶¶ 30-36, 39. While working for Goldstein and Wagh, Plaintiff kept a "work journal," where she would make daily notations about her work. Def.'s 56.1 ¶¶ 27-29.

On the resume Plaintiff submitted to YAS, she claimed to have three prior years of engineering experience and that she was proficient in certain technical, engineering-related computer programs. Def.'s 56.1 ¶¶ 40-41. Prior to being hired, Krys met with at least Seinuk and another senior executive at the firm, Jamie Ocampo. *Id.* ¶ 42. Seinuk consulted with senior executives at YAS about Plaintiff, and ultimately offered her a position at his firm as an "intermediate engineer" with the title of "Project Engineer." *Id.* ¶¶ 43-44.. She accepted in June 2005. *Id.* ¶ 44. Apart from senior management and "Project Managers," all engineers hired around that time were given the title of Project Engineer regardless of experience.[2] *Id.* ¶ 45. As an intermediate engineer, Krys had more responsibility for design work with less supervision than more junior engineers. *Id.* ¶ 50. Her duties included "(i) designing buildings; (ii) performing design calculations; (iii) attending client meetings; (iv) serving as the YAS contact person for some clients; (v) facilitating the presentation of in-house technical presentations given by various representatives of relevant software and/or engineering products' and (vi) marking and/or creating drawings that were drafted by YAS' drafting department." Def.'s 56.1 ¶ 51. As

---

[2] A number of the statements of fact by Defendant in the present motion contradict statements offered to the Equal Employment Opportunity Commission ("EEOC") in a letter from counsel for Defendant. Defendant concedes that the contradictory statements to the EEOC were in error and claims, without providing any supporting documentation, that these misstatements were corrected. *See* Def.'s Reply to Pl.'s Response to Def.'s Local Civ. R. 56.1 Statement of Undisputed Facts, at 3. While it ultimately does not affect my decision, the Court wishes to highlight this issue because the letter to the EEOC does not have a few simple errors, but presents a different story than the one now provided. For example, in the EEOC letter, Defendant belittles Plaintiff's "inflated description" of her position as "a Project Engineer, a mid-level engineering position," insists that she was hired as a "junior engineer" with only a title of "Engineer," and provides supporting documentation for these claims. *See* Pl.'s Response to Def.'s Local Civ. R. 56.1 Statement of Undisputed Facts ("Pl.'s 56.1"), Ex. A at 2-3. (Letter to EEOC from L. Susan Scelzo Slavin). Now, Defendant concedes that Krys was in fact a Project Engineer and hired as an intermediate engineer. Def.'s 56.1 ¶ 45. In another instance, counsel's letter to the EEOC on behalf of Defendant also claimed that two other individuals, Amir Taraj and Andrew Smith, were hired at the same level as Plaintiff, but now concedes that they were hired at a lower salary and at an employment level junior to hers. *See* Pl.'s 56.1, Ex. A at 2-3; Def.'s 56.1 ¶¶ 93-96. It is little wonder, after reading a caustic letter that she knew to be factually incorrect at least in part, that Plaintiff wished to pursue her day in court. I will not speculate about the reasons why entire paragraphs in the EEOC letter are apparently flatly wrong, but I would recommend that Defendant and its counsel do a little more investigation of events surrounding an employment discrimination claim, or for that matter any claim, before it so aggressively challenges a *pro se* before the Commission. It may spare itself some embarrassment, and perhaps even some litigation.

a Project Engineer, Krys would be supervised by Project Managers who oversee all actual design work from commencement to completion, and assign projects and delegate tasks. *Id.* ¶¶ 88-89. Two male employees, Amir Taraj and Andrew Smith, were hired at the same time as Krys, but were both paid a lower salary because they were junior in experience. Plaintiff was aware of at least two other female engineers employed by YAS in addition to her: Lynda Guo who was at or near the same level of experience as Krys, and Susan Bacas, who is a Senior Vice President, Equity Partner, and Project Manager at the company[3]. *Id.* ¶ 18.

Krys was given a copy of the YAS Company Handbook on her first day of employment. Def.'s 56.1 ¶ 46. The Handbook includes YAS' "Equal Employment Opportunity Policy," which states, *inter alia*, that that Defendant's policy is to "provide equal employment opportunity for all our employees in compliance with applicable local, state and federal laws and without regard to non-work related factors such as race, color, religion/creed, sex, national origin, age, disability, citizenship, marital status or sexual orientation." *Id.* ¶ 20. The Handbook also included a "Harassment/Discrimination Policy," which, *inter alia*, prohibits discrimination on the basis of gender, prohibits retaliation based on reporting discrimination, and describes a process by which an employee can report a discrimination claim. *Id.* ¶ 21. Finally, the Handbook also states that employment at YAS is "at-will" and that it "may be terminated for any reason or no reason and at any time." *Id.* ¶ 22. Krys also admits that Seinuk explained that her employment was "at-will." *Id.* ¶¶ 47-48.

As she did in her previous positions, Plaintiff kept a contemporaneous work journal while employed at YAS. Def.'s 56.1 ¶ 79. Plaintiff states, however, that it was kept for personal use only, was used alongside other work documents such that it is an incomplete representation of her work product, and otherwise lacks critical details to understand the context of the notations. *See* Pl.'s Response to Def.'s Local Civ. R. 56.1 Statement of Undisputed Facts ("Pl.'s 56.1"), ¶ 79. While at YAS, Plaintiff worked on a number of specific engineering projects, including "(i) New Utrecht High School, (ii) Renwick Street; (iii) 121st Street Precinct; (iv) Hampton Bays; (v) Cherry Lane; and (vi) MET 2." Def.'s 56.1 ¶¶ 85-86. While at YAS, Krys was supervised by a variety of Project Managers, both male and female. *Id.* ¶ 99.

---

[3] Plaintiff states that she only met Bacas when she was initially employed, and did not meet Guo until later that summer. Pl.'s 56.1 ¶ 98.

At or around the end of 2005, Plaintiff received a year-end bonus. According to Defendant, it is a company tradition to provide a bonus to all employees regardless of performance, *see id.* ¶¶ 52-53, but Plaintiff notes that there is no written record of such a policy. Pl.'s 56.1 ¶ 52-53. Krys ultimately received a $1,200 bonus, equal to a week's salary. Def.'s 56.1 ¶ 55. Sometime in or around July 2006, Plaintiff was given a performance review by Bacas and Ocampo, who both supervised her work on certain of the aforementioned projects. *See id.* ¶ 57. According to Krys' work journal, Ocampo "suggested taking over for my concrete design work"[4] and Bacas suggested "continue representing the firm[,] taking up smaller projects[,] attending meetings and asking her input as required." Slavin Decl., Ex. C at 227. Plaintiff was ultimately given a 5% raise in July 2006; Defendant claims it was a "cost-of-living" increase while Plaintiff argues it was based on merit. Def.'s 56.1 ¶¶ 59-60; Pl.'s 56.1 ¶¶ 59-60. A "Notice of Wage Adjustment" for Krys that accounts for the 5% increase includes a note that says "per Susan, work is not up to par." Slavin Decl., Ex. H. Certain other employees of both genders received higher wage increases. Def.'s 56.1 ¶¶ 61-63.[5] Also while at YAS, Plaintiff applied for her Professional Engineer ("P.E.") license with the New York States Education Department, a professional license that can be obtained through a combination of engineering education, work experience, and the completion of a two-part examination. *See* Def.'s 56.1 ¶¶ 65-66. Krys apparently completed two separate P.E. license applications, one dated May 1, 2006 and another dated August 17, 2006, which listed the various projects she worked on for Defendant. She requested that Bacas endorse the applications for verification of professional experience, and Bacas wrote that her work was "adequate" without further elaboration. *Id.* ¶¶ 70-74.

Defendant states that it determined that Krys' work was deficient in a variety of ways. Plaintiff needed to repeatedly contact technical support for the software programs she claimed proficiency in, and also made design calculations that were deficient or erroneous and had to be recalculated. Def.'s 56.1 ¶¶ 80-84. Krys claims it was common to contact technical support

[4] Defendant construes Plaintiff's note to mean that Ocampo took complex concrete design work away from her, in an attempt to demonstrate her lack of competency which ultimately led to her termination. Given the fact that Ocampo was apparently much more senior than Krys, it seems much more plausible that, as Plaintiff claims, Ocampo took over for her supervisor.

[5] To the extent Plaintiff challenges the evidentiary sufficiency of these documents, they may be considered because Defendant has provided sufficient information to conclude that it satisfies the business record exception to hearsay. *See* Fed.R.Evid. 803(6) ("Records of Regularly Conducted Activity"); Rouse Decl. ¶¶ 1-8 (custodian, human resources manager, attesting to practice of keeping "Notice of Wage Adjustment" form as regular business practice).

given the complexity of these applications, and that like any human she of course occasionally made design mistakes but mostly caught and corrected them. Pl.'s 56.1 ¶¶ 80-83. Plaintiff was given extra responsibility on one project, the 121st Street Precinct, but YAS concluded that she was unable to successfully complete her assignment, even though Seinuk considered it a relatively "simple" job. Def.'s 56.1 ¶¶ 91-92, 119-23. Krys denies any knowledge of deficiencies, that the job was actually quite complicated, and that she was never made aware of any problems with her work product. Pl.'s 56.1 ¶¶ 92, 119-23. Krys also had a dispute with the Project Manager for the Renwick Street project, Vahe Kalust, apparently over the details of a engineering structure called a "flat plate." Def.'s 56.1 ¶¶ 100-08. The issue was escalated to Seinuk, who claims to have been concerned about Krys' engineering skills and knowledge due to her confusion with regard to this structure. *Id.* Plaintiff contends that her conversation with Seinuk was informal, educational, and did not suggest any concern about her competency. Pl.'s 56.1 ¶¶ 100-08. In addition to these specific instances, several Project Managers generally complained to Seinuk about Plaintiff's work performance, though Krys states that she was never made aware of these complaints and that there is no written record of them. Def.'s 56.1 ¶¶ 111-13; Pl.'s 56.1 ¶¶ 111-13. Finally, Seinuk himself was aware of Krys' errors on certain projects, and even checked one himself and found "serious deficiencies;" Plaintiff again notes a lack of written records. Def.'s 56.1 ¶¶ 114-17; Pl.'s 56.1 ¶ 114. Ultimately, YAS senior management discussed Plaintiff's performance issues with Seinuk. After considering these concerns and his own, Seinuk terminated Krys on November 17, 2006, and told her at that time that he was dissatisfied with her work on two particular projects. Def.'s 56.1 ¶¶ 130-35.

       Plaintiff focuses on three instances that she claims demonstrate gender discrimination. First, Krys claims that Vahe Kalust, her Project Manager on Renwick Street, did not provide her with any work guidance and was otherwise demeaning to her. He failed to tell her about deadlines, did not provide timely feedback, corrected her work without advising her, and asked her to perform administrative tasks like print out emails, open attachments, fix formatting in Microsoft Word files, and bring drawings to client meetings. Def.'s 56.1 ¶¶ 148-56; Pl.'s 56.1 ¶¶ 148-53 (noting also that Kalust tried to blame her for his own incorrect work and that the administrative work took away from engineering assignments). Second, Plaintiff complains of unequal treatment. Specifically, she describes feeling as being treated different and not wanted at YAS, in particular because when she complained to Seinuk and Ocampo about her treatment

by Kalust, nothing was done. *See* Pl.'s 56.1 ¶¶ 157-58; Pl.'s Mem. of Law in Opp. at 7-8. Plaintiff also points to an incident where she heard Seinuk yell at two male employees, told them that he did not like their work, but ultimately did not terminate either of them. *See* Pl.'s 56.1 ¶¶ 159; Pl.'s Mem. of Law in Opp. at 7-8. Third, Krys claims that her termination was discriminatory because her work was at least satisfactory and she never received any negative feedback from Seinuk or other YAS senior executives. Pl.'s Mem. of Law in Opp. at 5. While Krys does not specifically rely on them, there are two other events relevant to the discrimination claim. First, Plaintiff made a complaint to YAS Human Resources personnel about a bathing suit calendar located in one of the offices. *See* Def.'s 56.1 ¶¶ 137-42. In response, YAS issued a memo to all employees reminding them of the YAS sexual harassment policy which was attached, and requested all inappropriate pictures or calendars be taken down. *Id.* Second, Krys claims that the women at YAS always celebrated birthdays with cake in the office and, despite requesting that they not do so for her, a birthday celebration was still held. Pl.'s 56.1 ¶¶ 146-47. Defendant states that it often allows office celebrations for a variety of events, and that employees of both genders participate. Def.'s 56.1 ¶ 146.

After she appeared before the EEOC and received her "right to sue" letter, Plaintiff filed her complaint on June 3, 2009. She brings suit for employment discrimination based on gender in violation of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000 *et seq*. YAS moves for summary judgment, arguing that Plaintiff has failed to prove a *prima facie* case of discrimination, that there were legitimate, non-discriminatory reasons for her termination, and that she cannot meet the ultimate burden of proving gender discrimination.

## II. DISCUSSION

### A. Legal Standard

"Summary judgment will be granted if the moving party shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also* Fed.R.Civ.P. 56(c). A material fact is one that will affect the outcome of the suit, and a dispute about a material fact occurs where there is sufficient evidence for a reasonable fact finder to return a verdict for the nonmoving party. *See Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). Evidence must be viewed in a

light most favorable to the non-moving party, and all inferences must be drawn in their favor. *See White River Amusement Pub, Inc. v. Town of Hartford*, 481 F.3d 163, 167 (2d Cir. 2007). A party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but … must set forth specific facts showing that there is a genuine issue for trial." *Sista*, 445 F.3d at 169; Fed.R.Civ.P. 56(e). Although district courts are encouraged to take caution with employment discrimination cases on a motion for summary judgment, "[e]ven in the discrimination context … a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment … and show more than some metaphysical doubt as to the material facts." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (internal citations and quotations omitted). Where the party opposing summary judgment is proceeding *pro se*, the Court must "read the pleadings ... liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir.1999); *see also Jacobs v. Ramirez*, 400 F.3d 105, 106 (2d Cir. 2005).

Title VII of the Civil Rights Act provides that it is "an unlawful practice for an employer to discriminate against any individual with respect to [her] compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). On summary judgment, Plaintiff's employment discrimination claim must be analyzed pursuant to the *McDonnell-Douglas*, "burden shifting" framework.[6] Under that framework, a plaintiff must first make out a *prima facie* case of discrimination; if she does so, then the defendant must go forward and show a legitimate, nondiscriminatory reason for its actions; and finally, if a legitimate reason is provided, the plaintiff must prove not only that the proffered nondiscriminatory reason was pretextual but also discriminatory animus. *See Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 91(2d Cir. 2001) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000)); *see also Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

**B. Prima Facie Case**

Krys can demonstrate a *prima facie* case of gender discrimination by showing (1) she is a member of a protected group, i.e. a woman, that is (2) qualified for the position, and (3)

---

[6] Plaintiff does not seek, and is not entitled to, a "mixed-motive" analysis, because she has not satisfied the heightened burden of producing "a 'smoking gun' or at least a 'thick cloud of smoke'" to support her allegations of discriminatory treatment. *Sista*, 445 F.3d at 174.

experienced an adverse employment action (4) under circumstances giving rise to an inference of discrimination. *Gorzynski*, 596 F.3d at 107; *see also Sista*, 445 F.3d at 169. Krys is obviously a member of a protected group and there is no dispute that she was terminated and therefore subject to an adverse employment action. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487 (2d Cir. 2009) (adverse employment action includes termination). Defendant argues that Plaintiff's *prima facie* case must fail because, based on Plaintiff's apparent unsatisfactory work, that she was not "qualified for the position." This argument is unavailing. "[T]he qualification necessary to shift the burden to defendant for an explanation of the adverse job action is minimal; plaintiff must show only that [s]he 'possesses the basic skills necessary for performance of the job.'" *Slattery*, 248 F.3d at 92 (quoting *Owens v. New York City Housing Auth.*, 934 F.2d 405, 409 (2d Cir.1991)). The fact that YAS determined Krys was fit to be hired, as well as her prior work experience and relevant college education, are more than sufficient to determine that she was "qualified for the position" as it is understood in this context. *See Slattery*, 248 F.3d at 92 ("As a result, especially where discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw.") (citing *Gregory v. Daly*, 243 F.3d 687, 695-96 (2d Cir.2001)).

Where Plaintiff runs into trouble, however, is in her ability to demonstrate that she was terminated "under circumstances giving rise to an inference of discrimination." None of the incidents focused on by Krys suggest an intention to discriminate based on her gender by terminating her employment. That Plaintiff's work was satisfactory, or that she was not aware that there were any problems prior to her termination, does not itself raise the requisite inference of discrimination. Moreover, Krys was clearly and knowingly employed on an at-will basis, where she could resign or be terminated for any reason that did not run afoul of the law. Somewhat related, Sienuk's treatment of two male co-workers is also, or in combination, not sufficient to raise an inference of discrimination. Plaintiff points to a single incident where two men were yelled at but were not ultimately fired: she cannot specifically describe what occurred and the few details she does provide are hearsay and shed little further light as to whether Krys and these two employees were in similar situations. *See Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). Finally, Plaintiff's description of her work relationship with Vahu Kalust does not sound particularly pleasant, but there is nothing to tie the unpleasantness to the suggestion that it was based on her gender. Kalust may have been a poor supervisor, but a

failure to properly supervise her work or making her perform "demeaning" administrative tasks, without any indication that this differed from his treatment of male co-workers or was done because she was female, is simply not enough to suggest discriminatory animus. An inference of discrimination may be derived from a variety of circumstances, such as a termination followed by a new hire similarly qualified outside the protected class, criticism in stereotypical or degrading gendered terms, or invidious comments about others in the protected group. *Leibowitz v. Cornell University*, 584 F.3d 487, 502 (2d Cir. 2009). Plaintiff provides no material facts to suggest anything of that nature or similar occurred in this case.

**C. Pretext and Discriminatory Motives**

Even if Plaintiff were able to provide a sufficient inference of discrimination related to her termination, she is unable to demonstrate that the decision to terminate was pretextual and motivated instead by discriminatory animus. YAS has provided evidence to show that it was not satisfied with Krys' work product or competency, and that she was terminated as a result. *See Slattery*, 248 F.3d at 93 (non-discriminatory justification by defendant shown by documented reasons in the record). Krys was given a smaller raise than other employees of both genders because her work was "not up to par." Her own notes on her performance evaluation indicate that a female supervisor, Susan Bacas, recommended she take on "smaller projects." In addition, Seinuk testified that he received complaints from a variety of senior executives about her performance, and observed first hand what he considered to be inadequate work. As Krys points out, she was neither made clearly aware of her deficiencies, nor is there much written documentation of her work issues, both of which might be compelling points about pretext if she had evidence to suggest ulterior, discriminatory motivations. But the evidence provided by Defendant, and only weakly refuted by Plaintiff, is sufficient to "permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

Finally, Plaintiff's claim cannot proceed because she fails to provide material facts which would show that the reasons for her termination are actually pretextual excuses for discrimination. To do so, Krys must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered … were false, and that more likely than not discrimination was the real reason for the

employment action." *Weinstock v. Columbia University*, 224 F.3d 33, 42 (2d Cir. 2000) (internal citations and quotations omitted). This can be done "either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more." *Sista*, 445 F.3d at 173. Factors include "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148-49 (2000)).

Plaintiff simply does not provide sufficient evidence that would indicate YAS chose to fire her based on her gender. As noted above, her relationship with Kalust may have been poor and he may even have been generally demeaning in tone, but "Title VII does not establish a general civility code," *Petrosino v. Bell Atlantic*, 385 F.3d 210, 223 (2d Cir. 2004), and without any apparent connection to her sex, it is insufficient to show discriminatory animus. Plaintiff describes feeling like an outsider at YAS, but this feeling without any factual support of discrimination is not enough to raise a triable issue. *See Bickerstaff v. Vassar College*, 196 F.3d 435, 456 (2d Cir.1999) (plaintiff's feelings of being discriminated insufficient); *see also Jenkins v. New York State Banking Dept.*, Nos. 07 Civ. 6322(JGK), 07 Civ. 11317(JGK), 2010 WL 2382417, at *10 (S.D.N.Y. June 14, 2010). Krys also fails to provide any evidence that Seinuk considered her protected status in any way when he made the decision to terminate her employment. *See Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 317 -18 (2d Cir. 1999) ("Because there is no evidence that Kneuss intentionally discriminated against Brennan because of her age summary judgment was properly granted."). Moreover, Seinuk made the decision to both hire and fire Krys less than two yeas later, further suggesting that gender discrimination was not a factor. *See Carlton*, 202 F.3d at 137-38. ("[w]here the termination occurs within a relatively short time after the hiring, there is a strong inference that discrimination was not a motivating factor in the employment decision"). In the end, Krys has failed to provide sufficient material facts that would allow a fact-finder to conclude that YAS decided to terminate her because she is a woman.

## III. CONCLUSION

For the reasons described above, Defendants' Motion for Summary Judgment is GRANTED and this case is DISMISSED.

The Clerk of the Court is instructed close the case and remove it from my docket.

**SO ORDERED**
**July 2, 2010**
**New York, New York**

**Hon. Harold Baer, Jr.**
**U.S.D.J.**